UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

NESHELLE PICKETT,

                                                Plaintiff,

            -against-

THE CITY OF NEW YORK, COMMISSIONER OF THE
NEW YORK CITY DEPARTMENT OF CORRECTION
("DOC") DORA SCHRIRO, CORIZON HEALTH, INC.,
PRISON HEALTH SERVICES, PHS CORRECTIONAL
HEALTHCARE, PHS MEDICAL SERVICES, P.C., DOC
MEDICAL DIRECTOR JOHN/JANE DOE, DOCTOR
CARLOTA JOHN-HULL, DR. MAX JEAN-GILLES,
DOC CORRECTION OFFICER JANE DOE,
DETECTIVE ANTHONY GONZALEZ (tax # 934943),
SERGEANT JAMES GRILLO (shield # 2504, tax #
922454),

                                                Defendants.

------------------------------------------------------------------------ x

**SECOND AMENDED COMPLAINT**

CV 14 0623 (CBA) (SMG)

Jury Trial Demanded

        Plaintiff NESHELLE PICKETT, by her attorneys RICHARD CARDINALE and IZABEL OLSZOWA GARCIA, alleges as follows:

**PRELIMINARY STATEMENT**

        1.     Plaintiff is a woman without a criminal record who resides in Brooklyn, New York. This case has two components. First, plaintiff alleges that defendants City of New York, New York City Department of Correction ("DOC") Commissioner Dora Schriro, Corizon Health, Inc., Prison Health Services, PHS Correctional Healthcare, PHS Medical Services, P.C., DOC Medical Director John/Jane Doe, Doctor Carlota John-Hull, Doctor Max Jean-Gilles, and DOC Correction Officer Jane Doe (collectively referred to herein as the "medical defendants") violated 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution by subjecting plaintiff to a non-consensual gynecological exam while

she was being admitted to Rikers Island Correctional Facility as a pre-trial detainee after she was arrested on June 6, 2012. Plaintiff also asserts claims of assault and battery against Corizon Health, Inc. under New York state law.

2. The second part of this case addresses plaintiff's arrest on June 6, 2012 and the prosecution arising out of that arrest. Plaintiff alleges that the City of New York and several New York City Police Officers of the 73rd Precinct and the Brooklyn North Narcotics Squad, including Detective Anthony Gonzalez and Sergeant James Grillo (collectively referred to herein as the "NYPD defendants"), violated her rights under 42 U.S.C. § 1983, the Fourth and Sixth Amendments to the United States Constitution and New York state law by falsely arresting her inside her home in Brooklyn, denying her a fair trial by fabricating evidence against her, and maliciously prosecuting her. As a result of her arrest and prosecution, plaintiff was incarcerated from June 6, 2012 until July 16, 2012 -- approximately 40 days -- at Rikers Island Correctional Facility. Prosecutors dismissed the false charges filed against plaintiff on October 10, 2013, more than a year after plaintiff's release from Rikers Island and after plaintiff made numerous court appearances.

3. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1988 and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

5. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide her New York state law claims of malicious prosecution and vicarious liability which form part of the same case and controversy as her federal claims under Article III of the United States Constitution.

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the defendants are subject to personal jurisdiction in this District and because the acts in question occurred in this District.

## JURY TRIAL

7. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## NOTICE OF CLAIM

8. In connection with plaintiff's claims against the City of New York under state law, a notice of claim was duly filed with the City of New York within 90 days of the dismissal of the criminal case filed against plaintiff, more than thirty days have elapsed since such filing and the City has not offered to settle plaintiff's state law claims.

9. Plaintiff testified at a 50-h hearing.

10. This action is brought within one year and 90 days of the dismissal of the criminal charges filed against plaintiff.

## PARTIES

11. Plaintiff is a woman without a criminal record who resides in Brooklyn.

12. The City of New York is a municipal corporation organized under the laws of the State of New York. The City acted pursuant to a policy, practice or custom at all relevant times herein.

13. Dora Schriro has been the Commissioner of the DOC since 2009. Schriro acted under color of state law and in her capacity as the Commissioner of the DOC at all relevant times herein. Schriro is sued in her individual and official capacities.

14. Corizon Health, Inc. is a corporation that has contracted with the City of New York to provide healthcare to inmates in DOC custody. Corizon is the successor corporation to Prison Health Services. Corizon acted jointly with the City of New York and the other medical defendants pursuant to a policy, practice or custom at all relevant times herein.

15. Prison Health Services is a corporation that had a contract with the City of New York to provide healthcare to inmates in DOC custody at all relevant times herein. Prison Health Services acted jointly with the City of New York and the other medical defendants pursuant to a policy, practice and/or custom at all relevant times herein.

16. PHS Correctional Healthcare is a corporation formerly known as Prison Health Services and which had a contract with the City of New York to provide healthcare to inmates in DOC custody at all relevant times herein. PHS Correctional Healthcare acted jointly with the City of New York and the other medical defendants pursuant to a policy, practice or custom at all relevant times herein.

17. PHS Medical Services, P.C. is a corporation which had a contract with the City of New York to provide healthcare to inmates in DOC custody at all relevant times herein. PHS Medical Services, P.C. acted jointly with the City of New York and the other medical defendants pursuant to a policy, practice or custom at all relevant times herein.

18. DOC Medical Director John/Jane Doe is the official who is in charge of overseeing the delivery of medical care to inmates in DOC custody. This defendant acted under

color of state law and in his/her capacity as the Medical Director of the DOC at all relevant times herein and is sued in his/her individual and official capacities.

19. Doctor Carlota John-Hull and Doctor Max Jean-Gilles are the medical providers who performed the non-consensual gynecological examination on plaintiff after plaintiff was admitted to Rikers Island in June 2012. These defendants acted under color of state law and in their capacities as DOC doctors at all relevant times herein and are sued in their individual and official capacities.

20. Correction Officer Jane Doe is the female DOC correction officer who was involved in the non-consensual gynecological examination performed on plaintiff after plaintiff was admitted to Rikers Island in June 2012. This defendant acted under color of state law and in her capacity as a DOC correction officer at all relevant times herein and is sued in her individual and official capacities.

21. Detective Anthony Gonzalez and Sergeant James Grillo are members of the NYPD. The defendants were acting under color of state law and within the scope of their employment as members of the NYPD at all relevant times herein. Gonzalez and Grillo are sued in their individual and official capacities.

## STATEMENT OF FACTS

**A.    Facts Relating to Non-Consensual Examination**

22. New York City Police Officers arrested plaintiff on narcotics charges on June 6, 2012.

23. Plaintiff was subsequently arraigned in Criminal Court, New York County, and the presiding judge set bail.

24. Because plaintiff was unable to immediately post bail, she was brought to the Rose M. Singer Center on Rikers Island, the only facility on Rikers Island which houses female inmates.

25. After being strip searched by correction officers, plaintiff was brought to an area of the jail where medical exams are performed.

26. Prior to entering an examination room, plaintiff asked Correction Officer Jane Doe what the exam involved.

27. Correction Officer Jane Doe, pursuant to a policy, practice or custom of the City of New York, told plaintiff that she was required to undergo a gynecological exam and blood and urine tests.

28. Plaintiff told Officer Doe that she did not want a gynecological exam.

29. Pursuant to a policy, practice or custom of the City of New York and Corizon Health, Inc. that required all new inmates to submit to a gynecological exam, Officer Doe told plaintiff that if she refused the exam and tests, she would not receive housing and would instead be placed in medical isolation with inmates who had communicable diseases.

30. It is a policy, practice or custom of the City of New York and Corizon Health, Inc. to coerce female inmates into submitting to unwanted gynecological exams by having DOC officers and medical staff threaten the women with medical isolation or solitary confinement.

31. After being threatened by Officer Doe, plaintiff entered an examination room and told Doctor Carlota John-Hull and Doctor Max Jean-Gilles that she did not want a gynecological exam.

32. Pursuant to a policy, practice or custom of the City of New York and Corizon Health, Inc., the doctors forced plaintiff to submit to the exam by stating to her: "Didn't the officer tell you what would happen to you if you refused the exam."

33. Pursuant to a policy, practice or custom of the City of New York and Corizon Health, Inc., the doctors never told plaintiff what the exam entailed, the purpose it served and that plaintiff had the legal right to refuse the exam.

34. After receiving these threats, plaintiff, having never before been to Rikers Island and terrified of being placed in medical isolation, involuntarily agreed to submit to the exam and involuntarily signed whatever forms were put in front of her.

35. Pursuant to a policy, practice or custom of the City of New York and Corizon Health, Inc., one of the doctors proceeded to perform a gynecological exam on plaintiff that included a vaginal exam with a speculum, a pap smear and a pregnancy test.

36. Plaintiff experienced emotional distress and felt violated during the involuntary exam.

37. In 2002, the undersigned filed a class action lawsuit challenging defendants' policy, practice and/or custom of forcing gynecological exams on female inmates.

38. In 2006, the City of New York settled with the named plaintiffs who had brought the suit and agreed to inform future detainees that they had the right to refuse the gynecological exam without suffering adverse consequences or retaliation.

39. Dr. Trevor Parks, a former official of Prison Health Services and a defendant in the aforementioned lawsuit, testified in a pre-trial deposition in a related case that after DOC informed female inmates that they had the right to refuse gynecological exams, there was a dramatic increase in the number of women refusing such exams.

40. Apparently unhappy with the number of refusals, the defendants have reinstituted their policy, practice or custom of forcing gynecological examination upon female inmates despite having been made aware that such exams are unconstitutional.

41. DOC Commissioner Schriro was aware of the City's unconstitutional policy, practice or custom of forced gynecological exams in June 2012, had a reasonable opportunity to prevent the violation of plaintiff's constitutional right to refuse medical treatment, but refused to intervene.

**B.    Facts Relating to Arrest and Prosecution**

42. On June 6, 2012, at approximately 6:45 a.m., New York City Police Detective Anthony Gonzalez, New York City Police Sergeant James Grillo and several other Police Officers of the Emergency Services Unit, the 73rd Precinct and the Brooklyn North Narcotics Squad entered plaintiff's home located at 750 Lincoln Avenue by force, entered plaintiff's bedroom where she was sleeping in her underwear, pointed their firearms at plaintiff, and arrested plaintiff without probable cause.

43. In an attempt to justify plaintiff's false arrest, defendants fabricated a story that they recovered marijuana in plaintiff's home, that plaintiff was involved in a conspiracy with the father of her children, Messiah Oakley, to sell illegal drugs, and that plaintiff possessed drugs and a weapon found at Oakley's home located at 160 Hull Street in Brooklyn on June 6, 2012.

44. Plaintiff did not live with Messiah Oakley at 160 Hull Street, Oakley did not live with plaintiff at 750 Lincoln Avenue, plaintiff had no involvement with Oakley when she was arrested, plaintiff never sold illegal drugs or was ever involved in a conspiracy to sell drugs with Oakley or anyone else, plaintiff was never in actual or constructive possession of

8

anything illegal found at 160 Hull Street, and plaintiff was never in possession of marijuana in her home.

45. After plaintiff was arrested, she was taken to the 73rd Precinct in Brooklyn.

46. In the 73rd Precinct, defendants Gonzalez and Grillo, acting in concert with the other officers involved in plaintiff's arrest, falsely charged plaintiff with conspiracy to sell drugs and with possession of drugs and a weapon found at Messiah's Oakley's home located at 160 Hull Street.

47. While plaintiff was in custody, defendant Gonzalez, acting in concert with the other officers involved in plaintiff's arrest including defendant Grillo, misrepresented to prosecutors that plaintiff was involved in a conspiracy to sell drugs and that she possessed drugs and a weapon found at Messiah's Oakley's home located at 160 Hull Street. Gonzalez also misrepresented to prosecutors that marijuana was recovered from plaintiff's home located at 750 Lincoln Avenue when she was arrested, but prosecutors never charged plaintiff with possession of marijuana.

48. While the aforesaid events were occurring, numerous NYPD officers and at least one supervisor, including defendant Grillo, observed their fellow officers violating plaintiff's constitutional rights, but they failed to fulfill their constitutional obligation to intervene and take remedial action.

49. Plaintiff was arraigned in Criminal Court on June 7, 2012.

50. Because of defendants' false allegations, the presiding judge set bail at $30,000 even though plaintiff did not have a criminal record.

51. Plaintiff was initially unable to post bail which resulted in her being incarcerated in Rikers Island Correctional Facility for approximately 40 days until July 16, 2012, when plaintiff's parents gathered enough money to post bail.

52. While plaintiff was incarcerated in Rikers Island, Correction Officers strip searched plaintiff and performed cavity searches of plaintiff -- usually in front of other inmates-- on numerous occasions.

53. While plaintiff was incarcerated in Rikers Island, she was separated from her three young children, one of which plaintiff was breastfeeding when she was arrested.

54. While plaintiff was incarcerated in Rikers Island, she was unable to attend her son's birthday and graduation from kindergarten.

55. While plaintiff was incarcerated in Rikers Island, she was evicted from her home at 750 Lincoln Avenue.

56. While plaintiff was incarcerated in Rikers Island, the City of New York terminated plaintiff's public assistance benefits.

57. Plaintiff was maliciously prosecuted and appeared in court on numerous occasions until prosecutors dismissed the false charges filed against plaintiff on October 10, 2013.

58. Neither the NYPD nor prosecutors ever had any evidence that plaintiff was involved with drugs, such as videos or testimony from confidential informants. Plaintiff was arrested and prosecuted merely because she had a prior romantic relationship with Messiah Oakley and merely because she had been in Oakley's home when she was previously involved with him.

## DAMAGES

59. Plaintiff suffered damage as a result of defendants' actions. Plaintiff was incarcerated for approximately 40 days and suffered a loss of liberty, emotional distress, fear, anxiety, sadness, embarrassment, humiliation and the damages described above in paragraphs 53-56.

## FIRST CLAIM

## (DEPRIVATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

(Against the Medical Defendants)

60. Plaintiff repeats and realleges the foregoing allegations.

61. As described herein, the medical defendants violated the Due Process Clause of the Fourteenth Amendment to the Constitution by subjecting plaintiff to a forced gynecological examination while she was being admitted to Rikers Island.

62. Accordingly, the medical defendants are liable to plaintiff for violating her right to refuse medical treatment under the Due Process Clause of the Fourteenth Amendment.

## SECOND CLAIM

## (FAILURE TO INTERVENE UNDER THE FOURTEENTH AMENDMENT)

(Against the Medical Defendants)

63. Plaintiff repeat and realleges the foregoing allegations.

64. All of the medical defendants were aware of the City's and Corizon Health's unconstitutional policy, practice or custom of forced gynecological exams at all relevant times, had a reasonable opportunity to prevent the violation of plaintiff's constitutional right to refuse medical treatment, but refused to intervene.

65. Accordingly, the medical defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's right under the Fourteenth Amendment to refuse medical treatment.

## THIRD CLAIM

### (FALSE ARREST UNDER THE FOURTH AMENDMENT)

(Against the NYPD Defendants)

66. Plaintiff repeats the foregoing allegations.

67. At all relevant times, plaintiff did not commit a crime or violation.

68. Despite plaintiff's innocence, the defendants arrested plaintiff.

69. Plaintiff was conscious of her confinement, did not consent to her confinement and her confinement was not privileged.

70. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for false arrest.

## FOURTH CLAIM

### (DENIAL OF A FAIR TRIAL UNDER THE SIXTH AMENDMENT)

(Against the NYPD Defendants)

71. Plaintiff repeats the foregoing allegations.

72. Defendants maliciously misrepresented to prosecutors that plaintiff had committed several crimes.

73. Defendants' misrepresentations deprived plaintiff of liberty.

74. Accordingly, the defendants are liable to plaintiff under the Sixth Amendment for denying her a fair trial.

## FIFTH CLAIM

### (MALICIOUS PROSECUTION UNDER THE FOURTH AMENDMENT)

(Against the NYPD Defendants)

75. Plaintiff repeats the foregoing allegations.

76. Defendants maliciously misrepresented to prosecutors that plaintiff had committed several crimes and initiated a prosecution against her or played a role in initiating a prosecution against her.

77. Defendants' misrepresentations deprived plaintiff of liberty.

78. The criminal case filed against plaintiff was ultimately dismissed.

79. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for malicious prosecution.

## SIXTH CLAIM

### (FAILURE TO INTERVENE UNDER THE FOURTH AND SIXTH AMENDMENTS)

(Against the NYPD Defendants)

80. Plaintiff repeats the foregoing allegations.

81. Defendants had a reasonable opportunity to prevent the violations of plaintiff's rights under the Fourth and Sixth Amendments, but they failed to fulfill their constitutional obligation to intervene and take remedial action.

82. Accordingly, the defendants are liable to plaintiff for the deprivation of plaintiff's rights under the Fourth and Sixth Amendments.

## SEVENTH CLAIM

### (MALICIOUS PROSECUTION UNDER STATE LAW)

(Against the NYPD Defendants)

83. Plaintiff repeats the foregoing allegations.

84. Defendants maliciously misrepresented to prosecutors that plaintiff had committed several crimes and initiated a prosecution against her or played a role in initiating a prosecution against her.

85. The criminal case filed against plaintiff was ultimately dismissed.

86. Accordingly, the defendants are liable to plaintiff under New York state law for malicious prosecution.

## EIGHTH CLAIM

### (VICARIOUS LIABILITY)

(Against the City of New York)

87. Plaintiff repeats the foregoing allegations.

88. The police officers who commenced and maintained a bogus prosecution against plaintiff were acting within the scope of their employment as members of the NYPD at all relevant times herein.

89. Accordingly, the City of New York is vicariously liable to plaintiff under New York state law for malicious prosecution.

## NINTH CLAIM

### (VICARIOUS LIABILITY)

(Against Corizon Health, Inc.)

90. Plaintiff repeats the foregoing allegations.

91. The individuals who performed the non-consensual gynecological examination on plaintiff as described herein were acting within the scope of their employment as employees of Corizon Health, Inc. at all relevant times herein.

92. Accordingly, Corizon Health, Inc. is vicariously liable to plaintiff under New York state law for assault and battery.

WHEREFORE, plaintiff requests the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

    d. Such other and further relief as the Court may deem just and proper.

DATED:    September 17, 2014

/s/

_____
RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-9391

IZABEL OLSZOWA GARCIA
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-4734
(646) 239-4330